IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MONTGOMERY COUNTY, MARYLAND** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. PJM 16-713 |
| **MANAGED CARE INNOVATIONS, LLC** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Montgomery County, Maryland (the "County") sues Managed Care Innovations, LLC ("MCI"), alleging that, over the time that MCI provided third-party claims administration services to the County, it mismanaged dozens of claims against the County, a self-insurer, to the considerable detriment of the County.

Focusing on the largest of those allegedly mismanaged claims, MCI filed a Motion for Summary Judgment (ECF No. 36), to which the County filed a Response in Opposition and Cross-Motion for Summary Judgment (ECF No. 42). The Court held a hearing on June 8, 2017, at which it granted the County's Cross-Motion for Summary Judgment as to the issue of liability only, and took all remaining issues in the cross-motions under advisement. ECF Nos. 56-58.

For the reasons set forth in this Memorandum Opinion, the County's Cross-Motion for Summary Judgment (ECF No. 42) will now be **GRANTED IN PART** and **DENIED IN PART** and MCI's Motion for Summary Judgment (ECF No. 36) will be **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 30, 2007, the County and MCI entered into a written contract (the "Contract") requiring MCI, for the period of July 1, 2007 to June 30, 2009, to provide third-party claims

1

administration services ("TPA Services") to the County. Excerpts of the Parties' Contract, the County's Cross-Mtn. for Summary Judgment, Exhibit 1, Appx. 1-6, ECF No. 44. The term of the Contract was later extended to June 30, 2015. The County's Cross-Mtn. for Summary Judgment 2, ECF No. 42.

The Contract authorized MCI to engage a subcontractor to perform relevant services and, from the start of the term until June 30, 2012, MCI engaged Gallagher Bassett as a subcontractor to perform the TPA Services for the County.[1] Cross-Mtn. for Summary Judgment at 2.

The County's Request for Proposal ("RFP"), which was incorporated by reference into the Contract, laid out the parties' obligations. Excerpts of the Parties' Contract at Appx. 2; Extract from Request for Proposal, Cross-Mtn. for Summary Judgment, Exhibit 2, Appx. 17-34, ECF No. 44. Pursuant to the RFP, MCI assumed several obligations regarding the handling of cases against the County, the nature of its cooperation with the County, and the need for timeliness in the handling of the claims. *Id.* at 28-31. The RFP also required MCI to abide by all requirements of the Maryland Workers' Compensation Act, Code of Maryland Regulations, and any other rules formal or otherwise implemented by the Maryland Workers' Compensation Commission. *Id.* at 28. MCI guaranteed that all work performed under the Contract would be accomplished in a workmanlike manner and in compliance with all laws, ordinances, and regulations. Excerpts of the Parties' Contract at Appx. 10-11. MCI agreed to indemnify and hold the County harmless for any loss and any other damage (including incidental and consequential damages) that might be suffered by reason of the contractor's negligence or failure to perform its contractual obligations. *Id.* at 11.

---

[1] Subsequently, effective July 1, 2012, MCI engaged CorVel Corporation ("CorVel") as its subcontractor. Cross-Mtn. for Summary Judgment at 2.

2

On November 24, 2015, the County filed a Complaint against MCI in the Circuit Court for Montgomery County, Maryland, alleging breach of contract, breach of express warranty, and indemnification. *See Compl.* On March 10, 2016, MCI answered the Complaint and removed the case to this Court. Notice of Removal, ECF No. 1. A Scheduling Order was issued on April 13, 2016. Scheduling Order, ECF No. 15.

Subsequently, the parties filed a Consent Motion to Alter/Amend the Scope of the Scheduling Order, indicating that while the County was alleging that MCI mismanaged some 25 claims as to which the County was self-insured, one claim (the "Christopher V. Claim") in particular constituted more than half of the County's alleged damages. ECF No. 23. Believing that resolution of the Christopher V. Claim (whether by dispositive motion, settlement, trial, or otherwise) might facilitate resolution of the entire suit, the parties sought to defer discovery and motion practice regarding the other 24 claims. *Id.* Accordingly, the parties requested that the Court modify its Scheduling Order so that discovery and motion practice regarding claims other than Christopher V. would be deferred until further order. The Court granted the Consent Motion. ECF No. 24.

### A. The Christopher V. Claim

The undisputed facts of the Christopher V. claim are as follows.

On Thursday, April 19, 2012 at 5:40 pm, Christopher V.—a volunteer firefighter with the Rockville Volunteer Fire Department, then aged 28—was riding his motorcycle when he was involved in a severe accident. Excerpts of the Gallagher Bassett Claims Notes, Cross-Mtn. for Summary Judgment, Exhibit 7, Appx. 77-107, ECF No. 44. According to his supervisor, Christopher V. was traveling from his normal station, Fire Station 3 in Rockville, Maryland, to Fire Station 14 in Beallsville, Maryland to attend an assigned meeting. Email from Alan Hinde,

3

MCI's Mtn. for Summary Judgment, Exhibit 3, App. 8, ECF No. 37. While traveling west on Darnestown Road in Montgomery County, Christopher V. attempted to pass five or six cars on the left—crossing a double yellow line in doing so—and ultimately collided with the lead car he was attempting to pass, as it was legally turning left in front of him onto Berryville Road. Police Report, Cross-Mtn. for Summary Judgment, Exhibit 5, Appx. 44-45, ECF No. 44.

The police report indicates that the driver of the car with which Christopher V. collided, Salem Abadi, did not contribute to the accident but that it was Christopher V. who caused the accident by failing to yield the right of way. *Id.* The County says photographs taken at the scene indicate that Christopher V. had driven down a hill just prior to the accident and that, after the accident, the tachometer of the motorcycle was found to be stuck at "8,5000 revolutions per minute" (suggesting that this was the measure of speed at the time of the crash). Cross-Mtn. for Summary Judgment, Exhibit 6, Appx. 46-76, ECF No. 44.[2]

Christopher V. suffered devastating permanent injuries, was temporarily placed into an induced coma, and to this day suffers from serious brain damage. Excerpts of the Gallagher Bassett Claims Notes at Appx. 104-106.

On April 20, 2012, the day following the accident, Timothy Jones, President of Rockville Volunteer Fire Station 3, reported the accident to the County for workers compensation purposes. *Id.* On Sunday, April 22, 2102, MCI's subcontractor Gallagher Bassett assigned the claim to adjuster Nina Hill. *Id.* Over the course of the next two weeks, Hill communicated with representatives of the Rockville Fire Department (including Jones and Alan Hinde, Division Chief of the Volunteer Services of the Montgomery County Fire and Rescue Service) as well as

---

[2] This is obviously wrong. The correct number is almost certainly 8,500 revolutions per minute ("RPM"). It appears relatively easy, after appropriate investigation of relevant variables, to convert RPM to linear miles per hour. Had this been done, it would quite possibly have indicated that the motorcycle was traveling at an excessive rate of speed at the time of the accident.

4

County employees (including Terry Fleming and Lissa Bales, respectively the Chief and Claims Manager of the Montgomery County Division of Risk Management and Wendy Karpel, the Supervisor of the Workers Compensation Unit in the County's Office of County Attorney). *Id.* at 77-107. A key issue discussed among all these individuals was whether Christopher V. was on duty at the time of the accident. *Id.* at 94. Various means of assessing this fact were suggested to Hill. *Id.* at 77-107.

In an oral conversation with President Jones of Fire Station 3, Hill was advised that, although Christopher V. was not paid for his mileage to attend a meeting on April 19, 2012 (one of the means of assessing whether he was on duty that day), an entry on Fire Station 3's computer indicated that Christopher V. had logged onto the computer at Fire Station 3 on April 19, 2012 (suggesting that he "clocked in" at Fire Station 3 prior to the accident, another one of the means of assessing whether he was on duty that day). Email from Wendy Karpel, Mtn. for Summary Judgment, Exhibit 3, App. 14-16, ECF No. 37; Email from Lissa Bales, Mtn. for Summary Judgment, Exhibit 3, App. 18-20, ECF No. 37. Jones subsequently sent Hill an email in which he may have copied and pasted information from the Fire Station 3 computer's log-in system, which he suggested "show[ed] that [Christopher V.] signed in to attend the MCVFRA Meeting on April 19, 2012." Email from Lissa Bales, Mtn. for Summary Judgment, Exhibit 3, App. 18-20. Hill forwarded Jones' email to Bales at the County Division of Risk Management and asked Bales if she had a recommendation as to how she might secure a copy of the actual log. *Id.* Bales directed Hill to call President Jones again and "flesh out further what other evidence he can supply on this." *Id.*[3] Hill called Jones, who said he would ask the "IT person."

---

[3] In her deposition testimony, Bales explained that, on prior occasions, the Montgomery County Division of Risk Management suspected that the Rockville Volunteer Fire Department had been less than truthful about its workers' compensation claims in order to make sure that the claims of their volunteer

5

Excerpts of the Gallagher Bassett Claims Notes at Appx. 89. Hill's claim notes indicate that she told Jones that the information he had provided was "not sufficient documentation." *Id.* Hill, however, never followed up with Jones regarding this necessary documentation when Jones failed to supply it. *See generally id.*

On May 9, 2012, Hill received a copy of the police report and summarized it in her claim notes. *Id.* at 90. The notes mentioned that Christopher V. had illegally passed five or six vehicles proceeding outside a double yellow line. *Id.* Hill called Abadi (the driver of the lead car involved in the accident), but Abadi refused to speak with her. *Id.* at 90. Hill's claim notes indicate that she never discussed the potential implications of the police report, including the possible defense of willful misconduct on Christopher V.'s part, with her supervisor. *See generally id.*

On May 18, 2012, Maryland's Workers' Compensation Commission mailed a form to Gallagher Bassett noting that, on May 16, 2012, a formal claim had been filed on behalf of Christopher V. and that the "consideration date"—i.e., the deadline for an employer/insurer to notify the Commission and the claimant that the claim would be contested—was June 8, 2012. *Id.* at 86; Workers' Compensation Commission Information Form, Mtn. for Summary Judgment, Exhibit 8, App. 80, ECF No. 37; C-30 Form, Exhibit 13, Appx. 140, ECF No. 44. On June 13, 2012, five days <u>after</u> the consideration date, Gallagher Bassett filed a response form, raising no dispute with regard to the claim and effectively conceding its validity. C-40 Form, Exhibit 14, Appx. 143, ECF No. 44. Accordingly, on June 21, 2012, the Commission automatically entered an award of compensability in favor of Christopher V. Workers' Compensation Commission Award, Mtn. for Summary Judgment, Exhibit 9, App. 82, ECF No. 37.

---

firefighters would be covered. It was because of these previous instances of suspected misrepresentations that Bales specifically instructed Hill to follow up with Jones.

Adjuster Hill and Gallagher Bassett had 15 days from the date of the automatic award to file for a rehearing and 30 days to file an appeal. *See*, Md. Code, Lab. & Empl. §§ 9-726, 9-737. There is no evidence, however, and more particularly no documentation in the claim file, to establish that Hill took any steps to even consider requesting a rehearing or appealing the award. *See generally* Excerpts of the Gallagher Bassett Claims Notes.

In late July 2012, Bales received a call from CareFirst, which was presumably providing medical services to Christopher V., inquiring about the claim, which prompted Bales to look into the claims notes in the County's system. Excerpts of the Deposition of Lissa Bales, Cross-Mtn. for Summary Judgment, Exhibit 9, Appx. 118, ECF No. 44. After viewing the notes regarding the police report, Bales became concerned that Hill had not considered the impact of that report on the claim nor the potential for a willful misconduct defense. *Id.* at 118-19. Bales also noticed that Hill had failed to discuss these potential issues with her supervisor or the County Attorney and had, moreover, failed to contact key witnesses. *Id.* When Bales contacted Hill's supervisor, Genise Thomas, to inquire about the status of the claim, Thomas admitted to Bales that the claim had been inadvertently accepted because the consideration date had been missed. *Id.*

According to the County, as of March 13, 2017, it had paid approximately $1,172,603.00 toward the Christopher V. claim. Cross-Mtn. for Summary Judgment at 17.[4] The County anticipates future damages associated with the Christopher V. claim to be in the range of $2,185,000.00. *Id.*

On June 8, 2017, the Court held a hearing to address the parties' cross-motions for summary judgment.

---

[4] As of April 7, 2017, the date of the County's most recent filing, the amount paid had risen to $1,262,920.27.

7

## III. STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "*some* alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original)."A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## IV. ANALYSIS

At the June 8, 2017 hearing, counsel for MCI conceded that mistakes had been made in the handling of the Christopher V. claim. Transcript of Proceedings on June 8, 2017, 3, ECF No. 57 ("This claim was not handled properly. Further investigation should have been done, was requested to be done by the plaintiff, and the defendant is the agent charged with that responsibility."). MCI argued, however, that it was entitled to summary judgment because the Christopher V. claim was compensable in any event and, as a result, the County could not show that it would have prevailed even if the adjuster had contested the claim. *Id.* at 3-4. In other words, said MCI, even if it breached its duty in failing to contest the claim, the County suffered no damages. *Id.*

8

The Court rejected this argument, reasoning that it had no relation to whether there was a breach in the first place and that the question of damages could be deferred for future consideration. *Id.* at 2-5. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages."). *See also Hooton v. Kenneth B. Mumaw Plumbing & Heating Co.*, 271 Md. 565, 572, 318 A.2d 514, 518 (1974). Accordingly, the Court found that MCI breached the Contract with the County by reason of its clear negligence in the handling of the Christopher V. claim and in its Order issued following the hearing, the Court granted the County's Cross-Motion for Summary Judgment in part with respect to MCI's liability on Count I (the Breach of Contract claim).[5] ECF No. 58. The Court took all remaining issues in the cross-motions under advisement. *Id.*

　　i.　　<u>The County need not prove that the Christopher V. claim was compensable in order to recover damages.</u>

The parties disagree as to what damages, if any, are owed to the County. The County contends that it was damaged at the time of MCI's breach because it lost the opportunity to defend what was quite possibly a non-compensable claim. According to the County, the damage accrued the moment it lost its opportunity to contest the claim. MCI, in contrast, asserts that the County would only have suffered harm if the claim was in fact determined to be non-compensable. And according to MCI, foreclosure of the County's opportunity to contest the Christopher V. claim could not have caused the County harm if the claim was in fact

---

[5] The Court also denied MCI's Motion for Summary Judgment with respect to liability on Count I. *Id.*

9

compensable. In other words, if the claim was compensable, the County's payments to Christopher V. would simply represent the County's necessary and ordinary statutory obligations.

The Court agrees with the County's position. It suffered damage at the time it was stripped of the opportunity to contest the Christopher V. claim, irrespective of whether the Workers' Compensation Commission might eventually have found the claim compensable. MCI's breach closed the door on every chance the County had to challenge Christopher V.'s claim as non-compensable.[6] Having foreclosed the County's ability to contest the claim, MCI

---

[6] A covered employee is entitled to workers' compensation for an accidental personal injury from his or her employer. *See* Md. Code, Labor and Employment, § 9-501 (a). This is true "regardless of fault as to a cause of the accidental personal injury." *Id.* § 9-501(b). An employer may, however, raise affirmative defenses to escape liability for workers' compensation. *Id.* § 9-506. One such affirmative defense is that the injuries were caused by the willful misconduct of the covered employee. *Id.* § 9-506(e).

The parties address two arguments that would have been available to the County in contesting the Christopher V. claim: (1) that Christopher V.'s injuries were caused by his own willful misconduct and (2) that he was not a covered employee because he was not "on duty" at the time of the accident.

Pursuant to Section 9-506(e) of the Maryland Code of Labor and Employment:

> A covered employee or a dependent of a covered employee is not entitled to compensation or benefits under this title as a result of an accidental personal injury, compensable hernia, or occupational disease if the accidental personal injury, compensable hernia, or occupational disease was caused by the willful misconduct of the covered employee.

*Id.* "[W]illful misconduct may be found where the employee intended to place himself in a position whereby he might expect to meet with injury or death, and in carrying out his intention meets his [injury or] death as a result of the injuries sustained. The actions of the employee must be such as to show that he intended thereby to place himself in such a hazardous position that injury or death might result as the reasonable consequence of his act." *Board of Educ. For Montgomery Co. v. Spradlin*, 867 A.2d 370, 405 (Md. 2015). "99 C.J.S. Workmen's Compensation § 258 (1958), defines willful misconduct as the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences." *Williams Construction Co., Inc. v. Garrison*, 400 A.2d 22, 25 (Md. App. 1979). Negligent, highly imprudent, thoughtless, heedless, and even reckless actions do not constitute willful misconduct. *See Karns v. Liquid Carbonic Corp.*, 275 Md. 1, 13-18 (1975). *See also Baltimore Car Foundry Co. v. Ruzicka*, 132 Md. 491 (1918). Willful misconduct includes an employee's injury if he knows of, and appreciates, his liability to injury, but an employee is not guilty of willful misconduct simply because he is negligent or because he or she acted

10

cannot now open up the question of compensability, arguing moreover that it would be the County's burden to prove what might have been investigated and what the Workers' Compensation Commission might have determined so many years after the fact. Due to MCI's breach, and for that reason alone, the Workers' Compensation Commission was never called upon to render an opinion as to the issue of compensability. Instead it issued an automatic award. It would be sheer speculation to permit the conclusion that there would have been an obligation

---

imprudently, thoughtlessly, or unwisely. *See* 23 M.L.E. Workers' Compensation § 91 (citing *Garrison*, 42 Md. App. at 400).

The claims administrator had in her possession a police report and photographs from the scene of the accident that indicated that Christopher V. illegally passed five or six cars on the left—crossing a double yellow line to do so—and collided with the lead car, as it was legally turning left in front of him. The lead driver was in no way deemed negligent. The evidence also suggested that following the accident, Christopher V.'s motorcycle's tachometer was stuck at 8,500 revolutions per minute and that immediately prior to the accident, he rode down a hill.

There was also an open question as to whether Christopher V. was within the scope of employment when he suffered his injuries. At the Commission level, Christopher V. would have had the burden of proving that he was a covered employee as a volunteer firefighter. Pursuant to Section 9-234 of the Maryland Labor and Employment Code—the "Volunteer fire or rescue company" subsection of the Workers' Compensation title—"on duty" means:

> (1) fighting a fire;
> (2) performing a duty of a member of an advanced life support unit or an ambulance, first aid, or rescue squad in a volunteer company;
> (3) . . . performing a duty that the volunteer company assigns to the member;
> (4) performing a duty that a written bylaw or rule of government adopted for the volunteer company assigns to the member; [and]
> (5) going to or from performing a duty included under item 1, 2, 3, or 4 of this subparagraph . . .

Md. Code, Lab. & Empl. 9-234(a)(2)(i)(5).

The claims administrator had evidence suggesting that Christopher V. was on duty at the time of his accident because he was traveling to perform a duty assigned by the volunteer fire company pursuant to subsections (3) and (5). However, this evidence (primarily unsupported statements from Christopher V.'s supervisors) was not based upon first-hand knowledge. Due to past experience, the County suspected that these statements may have been untruthful and instructed the claims administrator to obtain verifying documentation. The claims administrator never obtained this information. Rather, as to the issue of scope of employment, she was left with what she herself referred to as insufficient documentation.

to pay the Christopher V. claim in any event. Because under the circumstances of this case that is a question that will never be answered, MCI must be held accountable for its breach.

As the Court sees it, the County's remedy lies, in part, in specific performance.[7] Under the Section 18 of the Contract:

> [MCI] [will be] responsible for any loss, personal injury, death and any other damage (including incidental and consequential) that may be done or suffered by reason of [its] negligence or failure to perform any contractual obligations. [MCI] must indemnify and save the County harmless from any loss, cost, damage and other expenses, including attorney's fees and litigation expenses, suffered or incurred due to [its] negligence or failure to perform any of its contractual obligations. . . . The negligence of any agent, subcontractor or employee of [MCI] is deemed to be negligence of [MCI].

Due to MCI's failure to perform its contractual obligations, the County has become liable for life-long payments to Christopher V. In consequence, pursuant to the Contract's indemnification clause, MCI must bear the burden of its (and its subcontractor's) actions. *See Namleb Corp. v. Garrett,* 149 Md.App. 163, 174, 814 A.2d 585 (2002) ("Specific performance may be granted in an appropriate case on the basis of the strength of the circumstances and equities of each party."); *Data Consultants, Inc. v. Traywick,* 593 F. Supp. 447, 453 (D. Md. 1983), *aff'd,* 742 F.2d 1448 (4th Cir. 1984) ("Specific performance of a contract is a matter of sound judicial discretion controlled by established principles of equity."). In reaching its decision, the Court takes note of several equitable doctrines, including unclean hands,[8] unjust enrichment,[9] and

---

[7] "To qualify for specific performance, a party must prove the existence of an agreement between the parties and a breach of that agreement by the other party." *Geoghegan v. Grant,* 2011 WL 673779, at *9 (D. Md. Feb. 17, 2011). As the Court has previously stated, both elements are clearly present here.
[8] The unclean hands doctrine states that "courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance." *Hlista v. Altevogt,* 239 Md. 43, 48, 210 A.2d 153, 156 (1965). *See also Lyon v. Campbell,* 33 F. App'x 659, 665 (4th Cir. 2002) ("[T]he doctrine of unclean hands permits a court to withhold equitable relief from a party who is guilty of willful wrongdoing in relation to the controversy before it.") (internal quotations omitted).
[9] Unjust enrichment consists of three elements: "1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the

estoppel.[10] MCI, whose nonfeasance almost across the board caused this state of affairs, blithely side-steps these doctrines in its apparent effort to walk away free and clear.

A substantial part of the bargain underlying the County's Contract with MCI was ensuring that the County would not have to engage in *post hoc* litigation of unresolved questions of compensability. In exchange for monetary consideration, the County received a promise from MCI that the County would not have to investigate and gather evidence on claims and most certainly would not have to do so many years after the incidents underlying the claims occurred. To require the County to prove that the underlying claim was not compensable at this juncture would be fundamentally unfair. As a direct result of MCI's failure to adequately investigate and possibly contest the claim, evidence relevant to the compensability of Christopher V.'s claim (i.e., the set of facts relevant to whether he engaged in willful misconduct and/or was "on duty" at the time of the accident) has essentially become unavailable. As MCI would have it, MCI would end up the beneficiary of its own serious breach of contract. *See Assaf v. Trinity Medical Center*, 696 F.3d 681, 686 (7th Cir.2012) ("[A] classic rule of contract law, is that a party should be prevented from benefitting from its own breach."); 23 Williston on Contracts § 63:8 (4th ed.); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 817 (6th Cir. 1999) ("In any event, it is also axiomatic that a party cannot benefit from its own breach."). *Cf. Ins. Co. of N. Am. v. J. L. Hubbard Co.*, 23 Ill. App. 3d 254, 261, 318 N.E.2d 289, 294 (1974) (concluding that where

---

defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–152, 757 A.2d 108, 113 (2000) ("A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment.").

[10] "The whole doctrine of equitable estoppel is a creature of equity and governed by equitable principles. It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the conduct of a party, including his spoken and written words, his positive acts and his silence or negative omission to do anything, rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced. Hence, one who claims the benefit of an estoppel must not only be free from fraud in the transaction, but he must have acted with good faith and *reasonable diligence;* otherwise no equity arises in his favor." *J.F. Johnson Lumber Co. v. Magruder*, 218 Md. 440, 447–48, 147 A.2d 208, 212 (1958).

insurance agent negligently failed to carry out peremptory instructions of insurer regarding policy, agent was liable to insurer for amount which it was required to pay under the policy).

In sum, with the exception of the County's attorneys' fees,[11] the Court will order MCI to indemnify the County, pursuant to the indemnification clause of the Contract, for payments already incurred by the County relative to the Christopher V. claim, and those that may be incurred in the future.[12]

    ii.    <u>Some damages are undisputed and may be decided as a matter of law, while others must be determined at trial.</u>

Notwithstanding the foregoing analysis, if there are genuine disputes of material fact regarding any aspect of damages suffered by the County, to that extent summary judgment in favor of the County would have to be denied.

The County argues that there are no genuine disputes with regard to the damages it has incurred and will incur in relation to the Christopher V. claim. It points to the $1,172,603.00 it had actually paid toward the Christopher V. claim as of March 13, 2017 and anticipates future damages at $2,185,000.00 based on the Future Medical Cost Projection ("Projection") that was solicited and obtained by MCI's current subcontractor, CorVel.

MCI contends that there are material questions of fact regarding the amount of damages allegedly suffered and to be suffered by the County. First, MCI argues that the fees that have been paid to outside counsel to address disputes that arose between Christopher V. and the County as to particular items of medical and other benefits he claimed should not be included in

---

[11] That is, for the time being.
[12] With regard to the non-Christopher V. claims involved in the instant litigation, for which resolution has been deferred until further order of the Court, the Court does not pass judgment. Determination of MCI's liability for those claims will depend on fact-specific considerations.

14

the County's claimed damages.[13] Second, MCI asserts that the future medical expenses for Christopher V. are uncertain and may be much lower than the amount suggested by the County. MCI, for instance, disputes that the County's Projection is an adequate measure of the estimated costs, the purpose of which, says MCI was to assist Christopher V. and the County in negotiating a lump sum settlement for future medical expenses. MCI contends that the reserve the County has established for Christopher V.'s future medical expenses (set at $778,967.92), which estimates money to paid out over 10 years, is a more reliable estimate than the Projection.

The County disagrees. First, it notes that of the $1,262,920.27 it had paid on the Christopher V. claim as of April 7, 2017, only $12,517.00 had been spent on outside counsel fees to resolve disputes with Christopher V. regarding claimed benefits. Still, the County maintains that all those fees should be included in the damage award.[14] With regard to estimated future damages, the County asserts that while some uncertainty is inherent in estimating future expenses, the Projection, completed by an indisputably qualified professional based on her experience and made to a reasonable degree of certainty, is a suitable assessment. This is especially true, says the County, in light of the fact that it was MCI that retained the expert in the first place. Moreover, MCI has failed to provide evidence to contradict the Projection's estimate. Furthermore, the County submits that the Projection was not obtained for settlement purposes, but rather it served as a basis for setting realistic reserves, i.e., for assisting in the determination

---

[13] *To be clear*: These fees paid to outside counsel do not represent fees incurred during the litigation of the instant case.

[14] Some of the fees (approximately $100.00) relate to the engagement of outside counsel due to unavailability of County Attorneys. According to the County, in this context, these costs would be included in the damages claim, in that they were incurred for the general defense of what otherwise was a non-compensable claim. Other of the fees (approximately $12,417.00) stem from the engagement of outside counsel on behalf of MCI but paid for by agreement by the County when MCI was responsible contractually for various penalties. The County argues that these fees are recoverable in that they would not have been incurred but for the breach of the contract and subsequent failure to make timely payments on the resulting expenses.

of what the County may need to pay on the Christopher V. claim over a ten-year period. Finally, the County contends that MCI's reliance on the established reserve is wholly inappropriate because, as a 5- to 10-year reserve, it does not provide as full of a picture of the future costs as the Projection.

The Court concludes that there are no genuine issues of material fact as to some damages MCI owes to the County but there are genuine issues as to other damages owed.

First, the damages as to which there is no genuine issue of material fact:

As of April 7, 2017, the County paid Christopher V. a total of $1,250,403.27 not including outside counsel fees.[15] These accumulated expenses are firm and uncontestable. Accordingly, the Court will order that MCI pay the County at least that amount.[16] Similarly, as to any amounts paid by the County to Christopher V. between April 7, 2017 and the entry of final judgment following trial, MCI shall pay that amount, when calculated, to the County.

With regard to future estimated expenses, while, as stated above, MCI is obliged to indemnify the County, the amount it should have to pay is genuinely in dispute and cannot be fixed as a matter of law. MCI's monetary liability to the County will arise as the County makes each payment to Christopher V. as required pursuant to the workers' compensation award (i.e., "pay as it goes" indemnification). At the same time, the County is unquestionably entitled to have MCI's future obligation reduced to a current figure based upon the present day value of the future estimated expenses that it will face.[17] At trial, the County will bear the burden of proof as to its future damages and, in response to the County's evidence, MCI can of course challenge

---

[15] The Court arrives at this number by subtracting the $12,517.00 in contested outside counsel fees from the reported total of $1,262,920.27 paid to Christopher V. as of April 7, 2017.

[16] The Court makes no determination as to the County's entitlement, if any, to pre-judgment interest, which the Court will address along with other outstanding issues related to damages at a later time.

[17] Reducing estimated future damages to a present amount is standard fare in the judicial system. While the future amount cannot be certain, a reasonable estimate can be established based in appropriate evidence.

16

that evidence by disproving the County's evidence and/or putting on its own projection of damages. The County's claim for estimated future expenses, therefore, will be separately addressed by the Court at a bench trial to be held hereafter.[18]

Similarly, the recoverability *vel non* of the County's attorneys' fees—both the outside counsel fees incurred to address disputes that arose between Christopher V. and the County during the pre-lawsuit handling of the claim as well as attorneys' fees and costs incurred in the instant litigation—will be deferred until trial

Just to note: "As concerns the grant of attorney fees, Maryland follows the common law 'American Rule,' which states that, generally, a prevailing party is not awarded attorney's fees unless [] the parties to a contract have an agreement to that effect . . ." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (internal quotations and citations omitted). Here, the Contract's indemnification clause requires that MCI "indemnify and save the County harmless from any loss, cost, damage and other expenses, *including attorney's fees and litigation expenses, suffered or incurred due to [MCI's] negligence or failure to perform* any of its contractual obligations." (Emphasis supplied). At trial, the parties may argue what they will based on this language.

## IV. CONCLUSION

For the foregoing reasons, Montgomery County's Cross-Motion for Summary Judgment (ECF No. 42) is **GRANTED IN PART** and **DENIED IN PART** and MCI's Motion for Summary Judgment (ECF No. 36) is **DENIED**.

a. Specifically, partial judgment will be entered in favor of Montgomery County and against MCI in the amount of $1,250,403.27, representing all payments actually made

---

[18] In a joint status report, the parties stated, "There has been no jury demand in this case," which means that the upcoming trial will be a bench trial.

by Montgomery County to Christopher V. as of April 7, 2017 (but for the time being, not including attorneys' fees and costs).

b. MCI shall be liable to Montgomery County for all payments actually made by Montgomery County to Christopher V. from April 7, 2017 to the date Final Judgment is entered in this case, following trial.

c. Such amounts as MCI may be determined to owe Montgomery County for future payments that may be made by Montgomery County to Christopher V. as well as the issue of any and all attorneys' fees that MCI may be determined to owe Montgomery County will be decided by the Court at trial,

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August** *10*, **2017**